UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

SECURA SUPREME INSURANCE COMPANY,

                        Plaintiff,

v.                                                                      3:24-CV-0547
                                                                        (GTS/TWD)
ANDREW JAMES LERRICK, M.D.; and
TRINA M. FINCH,

                        Defendants.
_____

ANDREW JAMES LERRICK, M.D.

                        Counter-Claimant,

v.

SECURA SUPREME INSURANCE COMPANY,

                        Counter-Defendant.
_____

APPEARANCES:                                           OF COUNSEL:

FREEMAN MATHIS & GARY, LLP                             DANIELLE RUDKIN, ESQ.
  Counsel for Plaintiff/Counter-Defendant
5 Penn Plaza, 23rd Floor
New York, NY 10001

DUKE HOLZMAN PHOTIADIS & RITTER LLP                    CHARLES C. RITTER, JR., ESQ.
  Counsel for Defendant/Counter-Claimant Lerrick      NICHOLE KRAMER JOERG, ESQ.
701 Seneca Street, Suite 750
Buffalo, NY 14210

LAFAVE, WEIN & FRAMENT, PLLC                           AMINA KARIC, ESQ.
  Counsel for Defendant Finch
1 Wall Street
Albany, NY 12205

GLENN T. SUDDABY, United States District Judge

## DECISION and ORDER

Currently before the Court, in this declaratory judgment action filed by Secura Supreme Insurance Company ("Secura" or "Plaintiff") against Dr. Andrew James Lerrick and Trina M. Finch ("Defendants"), are the following motions: (1) Plaintiff's motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c); and (2) Defendant Lerrick's cross-motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). (Dkt. Nos. 22, 25.) For the reasons set forth below, Plaintiff's motion is granted, and Defendant Lerrick's cross-motion is denied.

## I.   RELEVANT BACKGROUND

### A.   Plaintiff's Complaint

Generally, in its Complaint, Plaintiff asserts two claims: (1) that it has no duty to defend Defendant Lerrick in an underlying lawsuit brought against him by Defendant Finch for a sexual assault he allegedly perpetrated against her during a medical examination while he was practicing as a physician because various exceptions in his Homeowner's Policy ("Policy") preclude coverage for the alleged acts; and (2) that it has no duty to indemnify Defendant Lerrick related to that underlying action because Defendant Lerrick could not be held liable under any theory that could potentially fall within the scope of coverage of the Policy. (Dkt. No. 1.) Plaintiff seeks declaratory judgment that it has no duty to defend or indemnify Defendant Lerrick in the underlying action. (*Id.*)

### B.   Defendant Lerrick's Counterclaims

In response to Plaintiff's Complaint, Defendant Lerrick asserts a counterclaim for breach of contract, specifically that Plaintiff has breached its obligations under the Policy by failing or refusing to defend and indemnify him in the underlying action as required. (Dkt. No. 14, at ¶¶

2

42-51.)  Defendant Lerrick seeks declaratory judgment and injunctive relief requiring Plaintiff to

defend and indemnify him in the underlying action.  (*Id.*)

## C.    Parties' Briefing on Plaintiff's Motion and Defendant Lerrick's Cross-Motion

### 1.    Plaintiff's Memorandum of Law

Generally, in its motion for judgment on the pleadings, Plaintiff makes two arguments.

(Dkt. No. 22, Attach. 1.)  First, Plaintiff argues that, as a procedural matter, Illinois law should

govern this dispute because that is where the property insured by the Policy is located, and where

the Policy was issued.  (*Id.* at 7-8.)

Second, Plaintiff argues that the actions of Defendant Lerrick as alleged in the underlying

lawsuit are not covered by the Policy because exclusions related to sexual molestation,

professional services, and business activity apply to that conduct.  (*Id.* at 8-12.)

### 2.    Defendant Lerrick's Cross-Motion and Opposition

Generally, in his cross-motion and opposition to Plaintiff's motion, Defendant Lerrick

makes two arguments.  (Dkt. No. 25.)  First, Defendant Lerrick argues that Plaintiff's motion

cannot be granted because there are numerous issues of fact that would impact the legal

determination Plaintiff requests regarding coverage, including whether the conduct he engaged in

was intentional, whether it occurred at a place of business, and whether it occurred in the course

of his profession.  (*Id.* at 8-9.)

Second, Defendant Lerrick acknowledges that Illinois law should be applied here when

interpreting the Policy, but argues that relevant language in both the Policy and the Umbrella

Policy are, at the very least, ambiguous regarding whether the conduct involved here is covered

by either policy, and that all ambiguities must be resolved in his favor on this motion under Illinois law. (*Id.* at 9-12.)

### 3. Plaintiff's Reply Memorandum of Law

Generally, in response to Defendant Lerrick's cross-motion and reply to his opposition to Plaintiff's motion, Plaintiff makes two arguments. (Dkt. No. 28.) First, Plaintiff argues that, contrary to Defendant Lerrick's reliance on unresolved factual issues, the duty to defend is based on a comparison of the policy with the allegations in the underlying complaint, not a factfinder's actual later resolution of factual issues, and the complaint in the underlying action here does not suggest any facts that would be covered by the Policy. (*Id.* at 4-6.)

Second, Plaintiff argues that Defendant Lerrick's assertion that portions of the Policy provisions are ambiguous is of no merit because (a) the provisions he highlights are not relevant to the issue here, and (b) regardless of any ambiguity in a single provision, the alleged conduct is still not covered by the Policy under other exclusions or provisions. (*Id.* at 6-7.)

## II. GOVERNING LEGAL STANDARD

"The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that for granting a Rule 12(b)(6) motion for failure to state a claim." *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020) (quoting *Patel v. Contemporary Classics*, 259 F.3d 123, 126 [2d Cir. 2001]). It has long been understood that a dismissal for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), can be based on one or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim. *Jackson v. Onondaga Cty.*, 549 F.

Supp.2d 204, 211 nn. 15-16 (N.D.N.Y. 2008) (McAvoy, J.) (adopting Report-Recommendation on *de novo* review).

Because such dismissals are often based on the first ground, some elaboration regarding that ground is appropriate. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) [emphasis added]. In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal." *Jackson*, 549 F. Supp. 2d at 212 n.20 (citing Supreme Court case). On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson*, 549 F. Supp. 2d at 212 n.17 (citing Supreme Court cases) (emphasis added).

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson*, 549 F. Supp. 2d at 212 n.18 (citing Supreme Court cases); *Rusyniak v. Gensini,* 629 F. Supp. 2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d

ed. 2003). For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak,* 629 F. Supp. 2d at 213 n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 127 S. Ct. at 560-61, 577. Rather than turn on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id*. at 555-70. The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id*. at 555. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id*.

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial

experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (internal quotation marks and citations omitted). However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id*., it "does not impose a probability requirement." *Twombly*, 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949. Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Iqbal*, 129 S. Ct. at 1949 (internal citations and alterations omitted). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*.

Finally, a few words are appropriate regarding what documents are considered when a dismissal for failure to state a claim is contemplated. Generally, when contemplating a dismissal pursuant to Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 12(c), the following matters outside the four corners of the complaint may be considered without triggering the standard governing a motion for summary judgment: (1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference in the complaint (and provided by the parties), (3)

documents that, although not incorporated by reference, are "integral" to the complaint, or (4) any matter of which the court can take judicial notice for the factual background of the case.[1]

## III.    ANALYSIS

After careful consideration, the Court finds that Plaintiff's motion for declaratory judgment that it has no duty to defend or indemnify Defendant Lerrick in the underlying action should be granted for the reasons stated in Plaintiff's memoranda of Law.  *See, supra,* Parts I.B.1 and I.B.3 of this Decision and Order.  To those reasons, the Court adds the following analysis.

---

[1]      *See* Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); *L-7 Designs, Inc. v. Old Navy, LLC*, No. 10-573, 2011 WL 2135734, at *1 (2d Cir. June 1, 2011) (explaining that conversion from a motion to dismiss for failure to state a claim to a motion for summary judgment is not necessary under Fed. R. Civ. P. 12[d] if the "matters outside the pleadings" in consist of [1] documents attached to the complaint or answer, [2] documents incorporated by reference in the complaint (and provided by the parties), [3] documents that, although not incorporated by reference, are "integral" to the complaint, or [4] any matter of which the court can take judicial notice for the factual background of the case); *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (explaining that a district court considering a dismissal pursuant to Fed. R. Civ. 12(b)(6) "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint. . . .  Where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document 'integral' to the complaint. . . . However, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document.  It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document.") [internal quotation marks and citations omitted]; *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2009) ("The complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.") (internal quotation marks and citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir.1995) (per curiam) ("[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint," the court may nevertheless take the document into consideration in deciding [a] defendant's motion to dismiss, without converting the proceeding to one for summary judgment.") (internal quotation marks and citation omitted).

As an initial matter, the factual allegations in the underlying complaint do not plausibly suggest that the alleged conduct would qualify as an "occurrence" under the Policy.  For purposes of a claim for personal liability, the Policy by its terms applies to "*bodily injury* or *property damage* caused by an *occurrence* to which this coverage applies."  (Dkt. No. 1, Attach. 1, at 75 [emphasis in original].)  Defendant Lerrick acknowledges that the Policy defines an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions" that results in either bodily injury or property damage.  (*Id.* at 57.)  Examining the complaint in the underlying lawsuit, Defendant Finch's factual allegations cannot be reasonably construed as alleging that the asserted conduct was an "accident."  Granted, Defendant Finch asserts against Defendant Lerrick not only three claims of intentional torts (specifically, assault, battery, and intentional infliction of emotional distress) but two claims of *negligent* torts (specifically, negligence and negligent infliction of emotional distress).  (Dkt. No. 1, Attach. 2, at 9-15, 18-20.)  However, by definition, acts of negligence are reasonably

foreseeable;[2] and accidents are generally understood to be not reasonably foreseeable.[3]  More

importantly, as the basis for each of her claims, she alleges, in pertinent part, that Defendant

Lerrick "*forcibly* put his hand upon and touched [her]," including on her knees, thighs, between

her legs, and against her crotch and genital area, as well as that he "made comments of a sexual

nature to [her] and otherwise sexually harassed her."  (Dkt. No. 1, Attach. 2, at 8, ¶¶ 28, 30

[emphasis added].)  Because the relevant factual allegations (and claims) do not plausibly

suggest that either the conduct causing the bodily injury or the alleged bodily injury were

---

[2]      *See Black's Law Dictionary* at 1133 (9th ed. 2009) (defining "negligence" as, *inter alia*,
"[t]he failure to exercise the standard of care that a reasonably prudent person would have
exercised in a similar situation; any conduct that falls below the legal standard established to
protect others against *unreasonable risk* of harm . . .") (emphasis added); *see, e.g., Gallick v.
Baltimore & O.R. Co.*, 372 U.S. 108, 117 (1963) ("[R]easonable foreseeability of harm is an
essential ingredient of [FELA] negligence."); *Andrade v. City of Kankakee*, 238 N.E.3d 381, 391
(App. Ct. Ill. 3rd Dist. 2023) (noting that, under conventional tort principles, "[w]hen a
defendant's course of action creates a foreseeable risk of injury, the defendant has a duty to
protect others from that injury"); *Garest v. Booth*, 12 N.E.3d 661, 676 (App. Ct. Ill. 1st Dist.
2014) (noting that, in a negligence case, "the accident at issue must have been reasonably
foreseeable as the creation of a legal duty requires more than a mere possibility of an
occurrence"); *Di Ponzio v. Riordan*, 89 N.Y.2d 578, 583 (N.Y. 1997) ("Foreseeability of risk is
an essential element of a fault-based negligence cause of action because the community deems a
person at fault only when the injury-producing occurrence is one that could have been
anticipated.").

[3]      *See Black's Law Dictionary* at 16 (9th ed. 2009) (defining "accident" as, *inter alia*,
"something . . . that could not be reasonably anticipated"); *see, e.g., Viking Constr. Mgmt., Inc. v.
Liberty Mut. Ins. Co.*, 831 N.E.2d 1, 6 (App. Ct. Ill. 1st Dist. 2005) (defining an "accident" in the
context of an almost identical policy definition of "occurrence" as "'an unforeseen occurrence,
usually of an untoward or disastrous character or an undesigned sudden or unexpected event of
an inflictive or unfortunate character'") (quoting *State Farm Fire & Casualty Co. v. Tillerson*,
777 N.E.2d 986 [2002]); *Lanzetta v. DiNapoli*, 12 N.Y.S.3d 643, __ (N.Y. App. Div., 3d Dep't
2015) ("Under these circumstances, substantial evidence supports respondent's determination
that the victim's movement while being lifted could have been reasonably anticipated and,
therefore, the incident did not constitute an accident within the meaning of the Retirement and
Social Security Law . . . .") (citation omitted).

accidental, that conduct cannot be considered an "occurrence," and therefore would not be covered under the relevant terms of the Policy.

Defendant Lerrick argues that, because there have yet been no factual findings made regarding whether his conduct or the alleged injury were accidental or not, there can be no finding at this time that the Policy does not apply to his conduct. However, as Plaintiff argues, under Illinois law, the relevant comparison is between the Policy and the factual allegations in the complaint. *See West Bend Mutual Ins. Co. v. Krishna Schaumburg Tan, Inc.*, 183 N.E.3d 47, 54 (Ill. 2021) ("A duty to defend arises if the allegations in [the] complaint fall within or potentially within [the insurer's] policies' coverage.") (citing *Maryland Casualty Co. v. Peppers*, 355 N.E.2d 24 [1976]); *see also Pekin Ins. Co. v. Centex Homes*, 72 N.E.3d 831, 845 (App. Ct. Ill. 1st Dist. 2017) (noting that "the duty to indemnify 'arises only if the facts alleged [in the complaint] actually fall within coverage'") (quoting *Crum v. Forster Managers Corp. v. Resolution Trust Corp.*, 620 N.E.2d 1073 [1993]). As a result, the fact that the complaint alleges conduct that is intentional (or at least negligent) rather than accidental is sufficient to permit this Court to find that there has been no "occurrence" to which the Policy would apply.

In any event, in the alternative, even if the Court were to find that Defendant Lerrick's alleged conduct could be considered an "occurrence," Plaintiff is correct that neither the Policy nor the Umbrella Policy provide a basis for coverage of the alleged conduct. The Policy contains a number of exclusions to the personal liability coverage, three of which Plaintiff argues apply to the conduct alleged and therefore such conduct is not covered: (1) the Business exclusion; (2) the Professional Services exclusion; and (3) the Sexual Molestation, Corporal Punishment Or Physical Or Mental Abuse exclusion ("Sexual Molestation exclusion").

11

The Business exclusion indicates that the personal liability coverage does not apply to "[*b*]*odily injury* or *property damage* arising out of or in connection with a *business* conducted from an *insured location* or engaged in by an *insured*, whether or not the *business* is owned or operated by an *insured* or employs an *insured*." (Dkt. No. 1, Attach. 1, at 76-77 [emphasis in original].) A "business" is defined by the Policy as "[a] trade, profession or occupation or any other service, labor or task engaged in on a full-time, part-time or occasional basis," or "[a]ny other activity engaged in for money or other compensation," except activities "for which no insured received more than $2,000 in total compensation for the 12 months before the beginning of the policy period" and other exceptions not relevant here. (*Id.* at 56 [emphasis in original].) In the underlying complaint, Defendant Finch has alleged that, at the time of the wrongful conduct, (a) Defendant Lerrick was a physician licensed to practice medicine in New York with a specialty in otolaryngology, (b) he maintained an office for the practice of medicine at 50 Harrison Street, Suite 400, in Johnson City, New York, (c) he was a principal, owner, partner, employee, agent, and servant of United Medical Associates and United Health Services, and practiced medicine at a building owned by the latter, (d) the alleged assault occurred at Dr. Lerrick's aforementioned office while he was working as a principal, owner, employee, agent, and/or servant of United Heath Services, and (e) the alleged assault occurred against Defendant Finch (who was a patient of United Health Services at the time) during an appointment to address a medical problem she was experiencing related to her mouth. (Dkt. No. 1, Attach. 2, at ¶¶ 5-30.) The underlying complaint therefore alleges that the bodily injury that Defendant Finch suffered occurred in connection with Defendant Lerrick's engaging in a business (i.e., the practice of medicine for United Health Services at a location owned by United Health Services),

because the practice of medicine is a trade, profession, or occupation, and the complaint

indicates that Dr. Lerrick was engaging in that profession (given that it alleges she was at his

office for him to examine a medical problem related to her mouth consistent with his specialty in

otolaryngology). As a result, the factual allegations in the underlying complaint indicate that

Defendant Lerrick's conduct would fall under the business exception in the Policy, precluding

coverage.[4]

As Defendant Lerrick correctly notes, the Policy includes an endorsement related to

personal injury coverage that modifies certain parts of the Policy. (*Id.* at 111.) This

endorsement adds coverage for personal injury arising out of five enumerated offenses: (1) false

arrest, detention, or imprisonment; (2) malicious prosecution; (3) wrongful eviction or wrongful

entry; (4) slander and libel; and (5) violations of the right to privacy involving oral or written

publication. (*Id.*) It also alters some of the existing the terms of the Policy, including the

applicable exclusions. However, even if the endorsement replaces the exclusions listed in the

Policy, the endorsement still includes a business exception, which states that the Policy does not

apply to personal injury "arising out of or in connection with a *business* conducted from an

*insured location* or engaged in by an *insured*, whether or not the *business* is owned or operated

by an *insured* or employs an *insured*." (Dkt. No. 1, Attach. 1, at 112 [emphasis in original].)

The endorsement notably does not alter the definition of "business" in the Policy. Because this

business exception is identical to the one contained in the Policy, even if the endorsement

_____

[4]       The Court will not discuss the applicability of the Professional Services and Sexual
Molestation exceptions because (a) it has already found that the business exception would
preclude coverage, and (b) as will be discussed, the endorsement to the Policy appears to delete
both of those exceptions.

replaces the relevant language of the Policy, the alleged conduct is still excluded from coverage

by the express terms of the endorsement for the same reasons already discussed above.  Because

the alleged conduct is excluded from the Policy, Plaintiff has no duty to defend or indemnify

Defendant Lerrick related to the underlying action.

Defendant Lerrick is also covered by a Personal Umbrella Insurance Policy ("Umbrella

Policy") that is relevant here.  This Umbrella Policy covers "*damages* on behalf of the *insured*,

subject to the **EXCLUSIONS** and **LIMITS of LIABILITY**."  (Dkt. No. 1, Attach. 1, at 126

[emphasis in original].)  As relevant, the Umbrella Policy does not cover (a) personal injury

unless it is covered by the primary policy, (b) the rendering of or failure to render professional

services, (c) business pursuits of an insured unless covered by the primary policy, or (d) "*bodily*

*injury* or *personal injury* other than *bodily injury* arising out of sexual molestation, corporal

punishment or physical or mental abuse."  (Dkt. No. 1, Attach. 1, at 126-27 [emphasis in

original].)

As to personal injury (a term that does not appear in the Policy), that term is defined by

the Umbrella Policy as either (a) bodily injury, or (b) injury arising from certain enumerated

offenses, which includes false arrest, malicious prosecution, wrongful actions related to the place

that a person occupies, libel or slander, and violation of the right to privacy.  (Dkt. No. 1, Attach.

1, at 125.)  As an initial matter, the only aspect of personal injury relevant here is bodily injury,

because the underlying complaint does not allege any injury of the type described in the above

subsection (b).  The personal injury exclusion states that the Umbrella Policy does not cover

personal injury unless it is covered by the Personal Liability primary policy.  (Dkt. No. 1, Attach.

1, at 126.)  Again, the relevant "personal injury" that would potentially be covered in this case is

bodily injury, and, as already discussed, even though bodily injury is generally covered by the Policy, the circumstances alleged in the underlying complaint trigger one of the exceptions in that Policy, and therefore the alleged bodily injury is, in this instance, not covered by the Policy. As a result, the personal injury aspect of the Umbrella Policy does not appear to provide any additional basis for coverage in this case.

Similarly, the Umbrella Policy excludes from its coverage any business pursuits of the insured, unless that is covered by the primary Policy. (Dkt. No. 1, Attach. 1, at 126.) As was already discussed above, the Policy does not cover the relevant business that Defendant Lerrick was engaged in at the time the relevant conduct occurred, and thus the Umbrella Policy also excludes such conduct from coverage.

The Umbrella Policy also excludes coverage for the "rendering of or failing to render professional services." (Dkt. No. 1, Attach. 1, at 126.) The Court need not conclusively determine whether the underlying complaint alleges facts plausibly suggesting that Plaintiff suffered bodily injury as a result of Defendant Lerrick's rendering of professional services (although it seems likely it does, because Defendant Finch alleges that the conduct occurred at his office during a medical examination of her mouth). Even if this specific exclusion in the Umbrella Policy (or, for that matter, any similar exclusion in the in the Policy and its relevant endorsement) does not apply, the allegations still show that other exclusions would apply and preclude coverage. Plaintiff need only show that one exclusion applying to all the relevant claims is triggered here in order to show that it does not have a duty to defend or indemnify Defendant Lerrick, and it has done so here as discussed above related to the Business exception, and as discussed next related to the Sexual Molestation exclusion in the Umbrella Policy.

15

The Sexual Molestation exclusion precludes coverage for "[*b*]*odily injury* or *personal injury* other than *bodily injury* arising out of sexual molestation, corporal punishment, or physical or mental abuse." (Dkt. No. 1, Attach. 1, at 127 [emphasis in original].) Although Defendant Lerrick argues that certain language in the Umbrella Policy is ambiguous related to an exclusion provision which Plaintiff never relies upon as a basis for its request for declaratory judgment,[5] the Court notes that the same language is present in the relevant Sexual Molestation exception, and as a result will discuss those arguments here.

As an initial matter, the Court finds that the language Defendant Lerrick objects to is not ambiguous. Although the lack of commas in the relevant language – "*bodily injury* or *personal injury* other than *bodily injury* arising out of sexual molestation"– could, in the abstract, render the language ambiguous, the meaning is clear when the totality of the Umbrella Policy and the other exclusions are considered. Indeed, other provisions using the same language do include commas that indicate that "personal injury other than bodily injury" is meant to be read as a single term, rather than as "personal injury[,] other than bodily injury…." (*See* Dkt. No. 1, Attach. 1, at 128, sec. 22 [using "personal injury other than bodily injury" as its own category of injury], sec. 23 [listing "[b]odily injury, personal injury other than bodily injury, or property damage," as three distinct forms of injury].) Most tellingly, the definition of "personal injury" used on the Umbrella Policy specifically lists as categories of personal injury (a) bodily injury, and (b) injuries arising from certain enumerated offenses. (Dkt. No. 1, Attach. 1, at 125.) This definition itself suggests that there can be personal injury that is bodily injury, and personal

---

[5]    The Court will not discuss this other provision, both because Plaintiff does not argue for judgment based on it, and because the other provisions that Plaintiff does rely upon show that the alleged conduct is excluded from coverage.

injury other than bodily injury.  Indeed, to read the relevant language as "bodily injury or personal injury[,] other than bodily injury…" would be to ignore the fact that the definition of "personal injury" includes within it "bodily injury"; and therefore such an interpretation would essentially render the first use of the term "bodily injury" in such provision superfluous. Because only one reasonable interpretation can be drawn from the relevant language within the context of the Umbrella Policy as a whole, nothing about the Sexual Molestation exclusion (or any other exclusion that contains the same language) is ambiguous.  Thus, the relevant provision unambiguously excludes from coverage any relevant injury arising out of sexual molestation, corporal punishment or physical or mental abuse.  Because the underlying complaint alleges conduct that appears to fit within the scope of sexual molestation, this exclusion would preclude coverage under the Umbrella Policy.  *See West Bend Mutual Ins. Co.*, 183 N.E. at 54 (noting that, "[i]f the terms of the insurance contract are clear and unambiguous, the court will give them their ordinary plain meaning").

For each of the numerous above-stated reasons, the Court finds that the relevant conduct alleged in the underlying complaint is not covered by either the Policy or the Umbrella Policy because that alleged conduct triggers certain coverage exclusions in those policies.  Further, because the Court finds no duty to defend or indemnify under the circumstances presented, it also finds that the failure to defend or indemnify was not a breach of contract, and therefore dismisses Defendant Lerrick's counterclaim.  The Court accordingly grants Plaintiff's motion, denies Defendant Lerrick's cross-motion, and issues a declaratory judgment that Plaintiff has no duty to defend or indemnify Defendant Lerrick in the underlying action.

**ACCORDINGLY**, it is

17

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 22) is

**GRANTED**; and it is further

**ORDERED** that Defendant Lerrick's cross-motion (Dkt. No. 25) is **DENIED**; and it is

further

**ORDERED** that Defendant Lerrick's counterclaim is **DISMISSED**; and it is further

**ORDERED** that it is hereby **DECLARED** and **DECREED** as follows:

(1)    Plaintiff has no duty to defend Defendant Lerrick in the underlying action; and

(2)    Plaintiff has no duty to indemnify Defendant Lerrick in the underlying action; and

it is further

**ORDERED** that the Clerk of Court shall close this action.

Dated: May 9, 2025
Syracuse, New York

Glenn T. Suddaby
U.S. District Judge